2018 JUL 19 PM 12:18

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASON ZELLER,

   Plaintiff,

CASE NO.: 8:18-cv-01762-T-33-JSS

-vs-

UBER TECHNOLOGIES, INC.,

   Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, JASON ZELLER, by and through the undersigned counsel, and sues Defendant, UBER TECHNOLOGIES, INC., and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA").

## INTRODUCTION

1.   The TCPA was enacted to prevent companies like UBER TECHNOLOGIES, INC. from invading American citizen's privacy and prevent abusive "robo-calls."

2.   "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3.   "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256 scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to



1

rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of

47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8. The alleged violations described herein occurred in Pinellas County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Florida, residing in Pinellas County, Florida.

10. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

11. Defendant, UBER TECHNOLOGIES, INC., is an international technology company with its principal place of business located at 1455 Market Street, 4th Floor, San Francisco, CA 94103 and which conducts business in the State of Florida through its registered agent, CT Corporation System located at 1200 South Pine Island Road, Plantation, Florida 33324.

12. One of the primary ways in which Defendant commonly communicates with its drivers and riders is through text messages or telephone calls.

13. Upon information and belief, some or all of the calls/texts the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be

called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received and because he heard a pause when he answered his phone before a prerecorded voice came on the line and he received prerecorded messages from Defendant.

14. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (727) \*\*\*-8460, and was the called party and recipient of Defendant's calls/texts.

15. Defendant placed an exorbitant number of automated calls/texts to Plaintiff's cellular telephone (727) \*\*\*-8460.

16. Plaintiff does not currently have any account or business dealings with Defendant.

17. Plaintiff has never been an "active" driver in Defendant's system and never provided express consent to receive automated text messages or calls.

18. Plaintiff was not a party to any contract with Defendant, and Defendant sent him unauthorized automated text messages and placed unauthorized telephone calls without his prior express consent.

19. Defendant's income is dependant on the number of consumers registering as riders and drivers. As a result, Defendant often times fails to ensure that the receipients of its text messages and telephone calls have provided prior express consent.

20. Many of the telephone numbers in Defendant's possession are inaccurate, resulting in Defendant sending unauthorized text messages and telephonme calls to

individuals who have not provided consent to receive text messages or telephone calls from Defendant.

21. For example, on May 23, 2018 at 3:15 a.m. Plaintiff received a text message. In the "from" field of the transmission was the number +1 (720) 710-0850. The body of the text message read: "Your Uber code is 4940"

22. On several occasions over the last four (4) years, Plaintiff instructed Defendant's agent(s) to stop calling and texting his cellular telephone

23. In or about April of 2018, Plaintiff went online to Uber's website and selected the Account Help option. Plaintiff advised Defendant that he did not have an account with Uber and at that time demanded Defendant to stop contacting him at his cellular telephone number.

24. Again, in or about July of 2018, Plaintiff responded to a text message received from Defendant and said "Stop texting me". Plaintiff then received an automated response from Defendant stating "SMS from Uber is now disabled. To re-enable, reply START."

25. Defendant called Plaintiff at least fifty (50) times without Plaintiff's prior express consent.

26. Defendant sent Plaintiff at least one hundred (100) text messages containing generic, scripted messages without Plaintiff's prior express consent.

27. At no time did Plaintiff attempt to acquire the Uber application, become a customer of Uber, or even use the Uber app. Even if Plaintiff did try to acquire the Uber application, Defendant never took the appropriate steps to confirm the ownership of the

phone number to which Defendant was calling and transmitting text messages. Defendant did not obtain Plaintiff's consent to send any text messages or place any calls to Plaintiff.

28. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

29. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant, to remove the number.

30. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff; despite these individuals explaining to Defendant they wish for the calls/texts to stop.

31. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

32. Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call/text despite requests to stop.

33. Defendant has had numerous complaints from consumers across the country against it asking to not be called/texted; however, Defendant continues to call/text the consumers.

34. Defendant's corporate policy provided no means for Plaintiff to have his number removed from Defendant's call or text list.

35. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called/texted.

36. Not a single call placed by Defendant to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

37. Not a single text placed by Defendant to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

38. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

39. From each and every call/text placed without consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

40. From each and every call/text without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls/texts.

41. From each and every call/text placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call/text notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

42. Each and every call/text placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call/text notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

43. Each and every call/text placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

44. Each and every call placed without express consent by Defendant to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

45. Each and every call/text placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

46. As a result of the calls/texts described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety and aggravation.

## COUNT I
### (Violation of the TCPA)

47. Plaintiff fully incorporates and re-alleges paragraphs one (1) through forty-six (46) as if fully set forth herein.

8

48. Defendant willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls/texts made to Plaintiff's cellular telephone after Plaintiff notified Defendant that he wished for the calls/texts to stop.

49. Defendant repeatedly placed non-emergency telephone calls and text messages to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against UBER TECHNOLOGIES, INC. for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ Octavio Gomez*
Octavio Gomez, Esquire
Florida Bar No.: 0338620
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
Primary Email: TGomez@ForThePeople.com
Secondary Email: LDobbins@ForThePeople.com
*Attorney for Plaintiff*